IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBERT L. BROWN,<br>           Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>           Defendant. | Case No.: 1:14-cv-8139<br><br>Magistrate Judge Susan E. Cox |

## ORDER

Plaintiff Robert L. Brown ("Plaintiff") appeals the Commissioner of Social Security's decision to deny him Social Security disability benefits under Title II of the Social Security Act and Supplemental Income under Title XVI of the Social Security Act. We grant the Plaintiff's motion for summary judgment [dkt. 19][1] and deny the Commissioner's motion for summary judgment [dkt. 23]. The Administrative Law Judge's decision is reversed and remanded for further proceedings consistent with this opinion.

## STATEMENT

Plaintiff appeals the Commissioner of Social Security's ("Commissioner") decision to deny him Social Security disability benefits under Title II of the Social Security Act ("SSA") and Supplemental Security Income ("SSI") under Title XVI of the SSA.[2] Plaintiff filed a motion and memorandum for summary judgment [dkt. 19] seeking reversal of the decision of the Administrative Law Judge ("ALJ"). A motion and memorandum for summary judgment [dkt. 24] has been filed on behalf of Defendant Carolyn Colvin, Acting Commissioner of Social Security ("Commissioner"). For the reasons outlined below, we grant Plaintiff's motion [dkt. 19] and deny Commissioner's motion [dkt. 24]. The ALJ's decision is reversed and remanded for further proceedings consistent with this opinion.

---

[1] This Court hereby construes Plaintiff's Memorandum in Support of Summary Judgment as a motion.
[2] 42 U.S.C. 405(g), 216(i) and 223.

The Plaintiff filed an application for Disability Benefits Insurance on September 7, 2011, alleging disability as of February 24, 2011 ("AOD")[3] due to the following conditions: learning disability, sleep apnea, depression, anxiety, pinched nerves, shoulders and back pain, and back spasms.[4] The Social Security Administration denied the Plaintiff's initial application on November 28, 2011 and upon reconsideration on April 6, 2012.[5] On April 23, 2012, the Plaintiff filed a Request for a Hearing for Social Security Benefits, and the hearing took place on March 26, 2013, before ALJ Daniel Dadabo.[6] On May 24, 2013, the ALJ issued the Plaintiff an unfavorable decision finding that the Plaintiff had not been disabled from February 24, 2011 through the date of the decision.[7] The Plaintiff filed a Request for Review of Hearing Decision/Order with the Social Security Administration's Appeal Council ("Appeal Council") on June 25, 2013.[8] The Appeal Council denied his request on June 23, 2014.[9] Therefore, the ALJ's May 24, 2013 decision stands as the final decision of the Commissioner.[10]

## A. INTRODUCTION AND MEDICAL BACKGROUND

The Plaintiff was born on April 1, 1969 and was 41 years old at the time of his AOD.[11] According to the record, the Plaintiff sought treatment at the Lake County Health Department Community Center ("Lake County Health") from March 6, 2008 through February 8, 2013.[12] Lake County Health's records indicate that the Plaintiff suffered from hypertension, morbid

---

[3] R. 128-34.
[4] R. 139.
[5] R. 8-86, 90-94, 97-100.
[6] R. 95-96, R. 37-83.
[7] R. 18-36.
[8] R. 17.
[9] R. 6-11.
[10] 20 C.F.R. § 404.981, R. 6-11.
[11] R. 135.
[12] R. 204-238, 239-255, 297-310, 327-328, 329-346.

2

obesity, depression, and mild sleep apnea.[13] Lake County Health prescribed blood pressure medication for his hypertension and suggested a healthy diet and regular physical activity as treatment for his obesity.[14] Lake County Health's records also indicate that the Plaintiff was diagnosed with major depressive disorder, severe, anxiety disorder NOS (not otherwise specified), and was provided a Global Assessment Function ("GAF")[15] score of 40 out of 100.[16] For the treatment of Plaintiff's depression, Lake County Health prescribed the Plaintiff Prozac.[17] The Plaintiff's sleep apnea was confirmed through a formal sleep study.[18] The records further indicate that the Plaintiff was frequently out of medications due to his inability to afford them; his hypertension was uncontrolled; he was unable to see a psychiatrist; and his weight increased and was worsening his sleep apnea, but the Plaintiff was unable to afford a CPAP machine.[19]

From March 17, 2010 through September 2, 2010, the Plaintiff was treated for his right knee due to a torn ACL post twisting injury from Dr. Tomas Nemickas.[20] The Plaintiff was custom-fitted with a derotational brace and ambulated with the assistance of a cane.[21] While the Plaintiff planned to undergo ACL repair surgery, the Plaintiff never did.[22] Dr. Nemickas also treated the Plaintiff for his neck pain and the Plaintiff was to undergo a steroid treatment, with

---

[13] R. 239-255.
[14] R. 298-300.
[15] The GAF score reflects both severity of symptoms and functional level; for illustration purposes, a score of 42 reflects serious symptoms or any serious impairment in social, occupational, or school functioning. *Bates v. Colvin,* 736 F.3d 1093, 1099 (7th Cir. 2013).
[16] R. 305.
[17] R. 299-307.
[18] R. 247.
[19] R. 240, R. 239-255, 327.
[20] R. 213-215.
[21] R. 213-215, R. 218.
[22] *Id.*

the additional recommendation to seek physical therapy for cervical functional reconditioning and rehabilitation.[23]

According to Dr. Timothy J. Sterzik's psychological consultative examination ("CE") of the Plaintiff for the Bureau of Disability Determination Services ("DDS"), the Plaintiff claimed having auditory, tactile and potential visual hallucinations in addition to intermittent feelings of paranoia.[24] Dr. Sterzik also noted that the Plaintiff struggled with tasks that required sustained mental effort, concentration, working memory, sophisticated conceptual reasoning, and math calculations.[25]

According to Dr. Mahesh Shah's physical CE, the Plaintiff walked with a limp on his right side and that he was not using any assisting devices for ambulation that day.[26] The Plaintiff could not heel-walk, toe-walk, or squat down.[27] Dr. Shah listed the following problems under Clinical Impression:

> Problem #1: Low back pain with marked limitation of range of motion.
> Problem #2: Pain in the right knee with limitation of range of motion.
> Problem #3: History of sleep apnea. The claimant needs to have a CPAP machine. He cannot sleep well at night.
> Problem #4: Tingling and numbness in the hands. Examination was unremarkable.
> Problem #5: Obesity, which can make most of the above problems worse.[28]

The Plaintiff was reported to be homeless at the time of the psychological and physical CEs.[29]

On November 15, 2011, the Plaintiff underwent a psychiatric review by a non-treating, non-examining state agency doctor, Dr. R. Leon Jackson, who completed a residual functional

---

[23] R. 232.
[24] R. 256-260.
[25] R. 259-260.
[26] R. 263.
[27] *Id.*
[28] R. 264.
[29] R. 261.

4

capacity ("RFC") form.[30] Dr. Jackson reported mild limitations regarding restriction of activities of daily living and regarding difficulties in maintaining social functioning.[31] Further, Dr. Jackson reported moderate difficulties in maintaining concentration, persistence, or pace, and no episodes of decompensation.[32] In addition, Dr. Jackson completed the Plaintiff's Mental RFC assessment and he affirmed the learning disability, depression, and anxiety, but did not affirm severity of functional limitation.[33] Dr. Jackson further reported that the Plaintiff could improve with treatment; however, there is an elevated probability that Plaintiff's compliance with treatment is less than consistent due to financial constraints.[34] Moreover, Dr. Jackson noted that the Plaintiff's memory and understanding were moderately impacted, and the Plaintiff's sustained concentration, persistence, and pace were moderately impacted.[35] Dr. Jackson concluded that the Plaintiff retains the functional capacity to engage in very simple and routine vocational activities of a one and two-step requirement; however, the Plaintiff would require close and direct supervision during the initial stages of vocational training for new job activity.[36] Due to the Plaintiff's learning disability, Dr. Jackson recommended that the Plaintiff be given directions and requirements of the position via verbal directions, rather than written directions.[37] Lastly, Dr. Jackson reported the Plaintiff to be partially credible, but did not include a rationale as to why.[38]

---

[30] R. 271-284.
[31] R. 281.
[32] *Id.*
[33] R. 293-296, R. 295.
[34] *Id.*
[35] *Id.*
[36] R. 295.
[37] R. 295.
[38] R. 283.

5

On November 28, 2011, the non-examining state agency medical consultant, Dr. Young-Ja Kim, prepared a physical RFC assessment.[39] Dr. Kim's primary diagnosis was degenerative arthritis affecting the Plaintiff's spine and his second diagnosis was degenerative disease in the right knee.[40] In support, Dr. Kim reported that the Plaintiff had a limited range of motion and that the Plaintiff's x-rays indicated facet arthropathy throughout the lumbar spine.[41] Dr. Kim concluded that the Plaintiff was considered to be partially credible, but no rationale was provided in support.[42]

**B.    THE MARCH 26, 2013 HEARING BEFORE THE ALJ**

At the March 26, 2013 hearing before the ALJ, the Plaintiff testified that he had not worked since February 24, 2011 because of his sleep apnea, and that he was terminated from his janitorial job for falling asleep on his lunch break.[43] Additionally, the Vocational Expert ("VE") discussed the Plaintiff's relevant work summary, which included work as a food server (DOT # 313.374-014, semi-skilled and light) performed at unskilled and light levels, janitor (DOT # 381.687-018, unskilled and medium) performed at unskilled and light levels, and security guard (DOT # 372.667, semi-skilled and light) performed at a sedentary level.[44] When the ALJ asked the VE about the functional impact on work availability for an individual having involuntary hypersomnolence affecting him 20 to 30 minutes a day on a routine basis, the VE said he would not be able to sustain the work task and that it would not be tolerated at all.[45] When the ALJ asked whether jobs were available for individuals who needed extra supervision after the first 30

---

[39] R. 285-292.
[40] R. 285.
[41] *Id.*
[42] R. 290.
[43] R. 41-42.
[44] R. 68-70.
[45] R. 74.

days, the VE responded by saying that it would not be competitive at that point.[46] Finally, when the Plaintiff's attorney told the ALJ that the Plaintiff has quite a number of moderate limitations such as his ability to perform activities with regular attendance, being punctual, and working in coordination proximity to others, the ALJ said his point was taken and acknowledged that it would erode the occupational base.[47]

## C. THE ALJ'S MAY 24, 2013 DECISION

In his May 24, 2013 decision, the ALJ found that: (1) the Plaintiff met the insured status requirements of the Social Security Act through June 30, 2015; (2) the Plaintiff had not engaged in substantial gainful activity since his AOD on February 24, 2011; (3) the Plaintiff had severe impairments in the form of sleep apnea, morbid obesity, hypertension, mild cervical spondylosis, lumbar arthralgia, right knee anterior cruciate ligament disruption, major depression, and a learning disorder; (4) the Plaintiff's impairments did not meet the severity of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525 and 404.1526); (5) the Plaintiff had the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) subject to only occasional climbing, stooping, crouching, crawling, kneeling, and balancing, and the need for only the simplest work in the United States economy, GED level 1-2, involving only routine tasks that stay the same day-to-day and which do not require public contact, team coordination, or more than infrequent communication with others; (6) the Plaintiff is capable of performing past relevant work as a food server (DOT # 313.374-014) or janitor (DOT # 381.687-018); and (7) the Plaintiff has not been under a disability, as defined in the SSA from February 24, 2011 through the date of the ALJ's decision.[48]

---

[46] R. 76.
[47] R. 79, R. 81.
[48] R. 21-36.

## DISCUSSION

### A.  STANDARD OF REVIEW

The Court reviews the ALJ's conclusions of law *de novo,* but the ALJ's factual determinations are entitled to deference.[49] If the Appeal Council denies the Plaintiff's request for review of his determination, the ALJ's decision becomes the final decision of the Commissioner.[50] The findings of the Commissioner as to any fact, if supported by substantial evidence shall be conclusive; and the Commissioner's findings will be reversed only if they are not supported by substantial evidence or if the Commissioner applied an erroneous legal standard.[51] Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[52] In order to determine whether substantial evidence exists, the Court reviews the record as a whole but is not allowed to substitute its judgment for the ALJ's by reconsidering facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility.[53] The ALJ does not need to mention every piece of evidence but must adequately discuss the issues, and build an "accurate and logical bridge from the evidence to his conclusion."[54] Therefore, the ALJ's decision will be affirmed if it is supported by substantial evidence."[55]

### B.  ANALYSIS

#### 1.  The ALJ's Credibility Determination

---

[49] *Schmidt v. Astrue,* 496 F.3d 833, 841 (7th Cir. 2007).
[50] *Haynes v. Barnhart,* 416 F.3d 621, 626 (7th Cir. 2005).
[51] Social Security Act §205, 42 U.S.C.A. § 405(g); *Clifford v. Apfel,* 227 F.3d 863, 872 (7th Cir. 2000), as amended (Dec. 13, 2000) *citing Rohan v. Chater,* 98 F.3d 966, 970 (7th Cir.1996).
[52] *Clifford v. Apfel,* 227 F.3d 863, 869 (7th Cir. 2000), as amended (Dec. 13, 2000) *citing Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).
[53] *Jens v. Barnhart,* 347 F.3d 209, 212 (7th Cir. 2003).
[54] *Curvin v. Colvin,* 778 F.3d 645, 648 (7th Cir. 2015) (quoting Lopez ex rel. Lopez v. Barnhart, 336 F.3d 535, 539 (7th Cir.2003)).
[55] *Prochaska v. Barnhart*, 454 F.3d 731, 734 (7th Cir. 2006); 42 U.S.C.A. § 405(g).

The Plaintiff claims that the ALJ erred by making an improper credibility determination. An ALJ's credibility determination will be overturned only if it is "patently wrong," which is a high burden.[56] Because a reviewing court lacks the opportunity to observe the claimant testify, an ALJ's credibility determination is entitled to special deference.[57] However, the ALJ is still required to build an accurate and logical bridge between the evidence and the result.[58] According to the Social Security Ruling ("SSR") 96-7P, "[i]n determining the credibility, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements, information provided by treating or examining physicians or psychologists or other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record."[59] Moreover, SSR 96-7P goes on to say that a "determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight."[60] A court will affirm a credibility determination as long as the ALJ gives specific reasons that are supported by the record for his findings.[61]

In this case, the ALJ found that the Plaintiff's statements about his symptoms concerning the intensity, persistence and limiting effects of those symptoms were not entirely credible.[62] However, the ALJ's finding is deficient because he failed to consider the entire record, as

---

[56] *Id.*
[57] *Castile v. Astrue,* 617 F.3d 923, 929 (7th Cir. 2010).
[58] *Shramek v. Apfel,* 226 F.3d 809, 811 (7th Cir. 2000).
[59] SSR 96-7P.
[60] *Id.*
[61] *Skarbek v. Barnhart,* 390 F.3d 500, 505 (7th Cir. 2004).
[62] R. 27.

9

required by SSR 96-7p. The ALJ asserts that the Plaintiff has not received the type of medical treatment one would expect for a totally disabled individual. Yet, the ALJ failed to consider the Plaintiff's lack of financial means.[63] The ALJ must not draw any inference about a claimant's condition from this failure to receive treatment, unless the ALJ has explored the claimant's explanations as to the lack of medical care.[64] An inability to afford treatment is one reason that can provide insight into the individual's credibility.[65] Here, the ALJ's findings are lacking in support, because the ALJ failed to explain why he disregarded the evidence suggesting the Plaintiff's inability to afford care may have had on his inability to receive the care the ALJ believe was appropriate prior to making his opinion.[66]

The Plaintiff further argues that the ALJ does not adequately discuss the interdependent nature of the Plaintiff's obesity and his other ailments. Indeed, the ALJ does not sufficiently address the possibility that the Plaintiff's obesity may be worsening his other medical issues, and when he does, the ALJ treats the Plaintiff's failure to lose weight as non-compliance with a medical recommendation. Here, the ALJ is making a critical assumption that the Plaintiff would be restored to a non-severe condition if the Plaintiff followed the recommendation to lose weight.[67] Nowhere in the record does a doctor report that the Plaintiff would be restored to pre-disability health or a non-severe condition if he had successfully lost weight. Therefore, the ALJ's conclusion that the Plaintiff's failure to lose weight was noncompliance and indicative of the Plaintiff's non-disability status is not supported by the evidence.

---

[63] R. 27, Pl. Motion at 10.
[64] *Craft v. Astrue,* 539 F.3d 668, 679 (7th Cir. 2008).
[65] *Id.*
[66] Pl. Motion at 11.
[67] Pl. Motion at 9.

Similarly, the Plaintiff contends that the ALJ improperly equated the Plaintiff's ability to take care of himself and execute his household chores with the Plaintiff's ability to work.[68] The ALJ improperly used the Plaintiff's daily activities as a barometer of the plaintiff's working capacities because the ALJ failed to question the Plaintiff about how long his activities took and the manner in which the Plaintiff performed these activities. Therefore, the ALJ's finding that the Plaintiff's symptoms are not of the intensity, frequency, and restrictiveness that he asserts is not supported by evidence to create an "accurate and logical bridge" to his credibility determination, and is warranted clarification upon remand.[69]

### 2. The ALJ's RFC Assessment

The Plaintiff challenges the ALJ's finding that the Plaintiff has the RFC to perform light work because the evidence is contrary to the ALJ's RFC assessment and is consistent with the Plaintiff's testimony that he is capable of sedentary work but not able to sustain it.[70] An ALJ may not select and discuss only that evidence that favors his ultimate conclusion, but must articulate, at some minimum level, his analysis of the evidence to allow the Court to trace the path of his reasoning.[71] The Court has repeatedly admonished ALJs to sufficiently articulate their assessment of the evidence to assure the court that they considered the important evidence and to enable the court to trace the path of their reasoning.[72]

In this case, it appears that the ALJ failed to articulate his reasoning and assessment of the evidence. For instance, the Plaintiff contends that the ALJ failed to explain how he found the

---

[68] Pl. Motion at 11.
[69] R. 27.
[70] Pl. Motion at 13.
[71] *Diaz v. Chater,* 55 F.3d 300, 307 (7th Cir. 1995).
[72] *Scott v. Barnhart,* 297 F.3d 589, 595 (7th Cir. 2002).

Plaintiff to be at GED of Level 1-2.[73] Nowhere in his decision is there an explanation of how the ALJ concluded the Plaintiff to be at a GED level of 1-2, despite the contrary evidence in the record. According to the psychological testing performing during the CE, the Plaintiff was unable to complete simple math equations and struggled with sustained mental effort, working memory, and sophisticated conceptual reasoning.[74] The CE results are consistent with the DDS reviewer's limitations of very simple one- and two-step requirement.[75] However, the ALJ gave the DDS reviewer's opinion only limited weight because of the work the Plaintiff was doing immediately before the AOD.[76] By giving the Plaintiff's prior work more weight, the ALJ failed to consider that the Plaintiff had been terminated from his previous job because he had fallen asleep on his lunch break. However, the ALJ's assessment fails to consider the possibility that the Plaintiff, while technically employed before his AOD, was not capable of adequately performing that work, as evidenced by his termination. As such, it seems that the ALJ was only focusing on the evidence that supported his conclusion, and failed to adequately articulate how or why he determined that the evidence that undermined his decision could be neutralized.

Similarly, the Plaintiff also asserts that the findings by the VE are contrary to the ALJ's RFC assessment because the VE testified that the Plaintiff's previous occupations as a food server and janitor were performed at levels below the minimum requirements of the jobs.[77] In his decision, the ALJ discusses the Plaintiff's capacity to work by referring to the Plaintiff's past

---

[73] Pl. Motion at 14, Pl. Reply at 8.
[74] R. at 256-60
[75] Pl. Motion at 14, Pl. Reply at 8.
[76] Def. Resp. at 14.
[77] Pl. Reply at 8, R. 68, U.S. Dep't of Labor, Dictionary of Occupational Titles, app. C (4th ed. 1977, rev. 1991), available at
http://hypertension.oalj.dol.gov/PUBLIC/DOT/REFERENCES/DOTAPPC.HTM

work as a food server and janitor.[78] However, the ALJ fails to explicitly consider the VE's testimony about how the Plaintiff actually performed his previous positions—at unskilled and light levels—and simply restates the DOT's descriptions of the food server and janitor positions in his decision.[79] The DOT's descriptions of the food server and janitor positions designate higher skill levels than how the Plaintiff actually performed them. Accordingly, the ALJ fails to mention important evidence from the VE's testimony in his decision. Consequently, the ALJ does not provide enough explanation to permit a meaningful review.

Finally, the Plaintiff asserts that the CE findings do not support the ALJ's RFC assessment.[80] The ALJ found the Plaintiff with the RFC to perform light work as defined in 20 C.F.R. 404.1567(b), subject to only occasional climbing, stooping, crouching, crawling, kneeling, and balancing.[81] According to Dr. Shah's physical CE, the Plaintiff walked with a limp, experienced a marked reduced range of motion and tenderness in his back, and a limitation of range of motion in his right knee.[82] However, in his decision, the ALJ seems to dismiss Dr. Shah's report because it was based "only on symptom assessments that coincided with subjective account."[83] This is incorrect; Dr. Shah confirmed his findings with x-rays, range of motion testing, and a physical examination.[84] Instead, the ALJ gives Dr. Kim's Physical RFC Assessment substantial weight because it was "consistent with the record as a whole," without any further explanation.[85] Here, it appears that the ALJ is discussing only the evidence that supports his final conclusion—that the Plaintiff could perform light work, without delving into

---

[78] R. 31-32.
[79] Def. Resp. at 16, R. 31-32.
[80] Pl. Motion at 12.
[81] R. 26.
[82] R. 264.
[83] R. 29.
[84] R. 265.
[85] R. 30.

the contrary evidence from Dr. Shah. The Court has said, "[t]he better an explanation a source provides for an opinion, the more weight we will give that opinion."[86] Here, it seems unwarranted for the ALJ to give Dr. Kim's RFC Assessment substantial weight without explaining how or why it is consistent with the remainder of the medical record. The ALJ's conclusory statement, without more, cannot serve as the basis for relying on this evidence.

Thus, we agree with the Plaintiff that the evidence is contrary to the ALJ's findings and RFC assessment. Therefore, the ALJ should clarify and further elaborate his RFC findings upon remand.

## CONCLUSION

For the foregoing reasons, we reverse and remand this matter to further proceedings consistent with this opinion. Plaintiff's motion [dkt. 19] is granted and the Commissioner's motion for summary judgment [dkt. 24] is hereby denied.

**ENTER:**
**DATED: 4/19/2016**

Susan E. Cox
United States Magistrate Judge.

---

[86] *Elder v. Astrue,* 529 F.3d 408, 416 (7th Cir. 2008).